IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANICE JONES,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security; ROBERT K. COX, Administrative Law Judge; JACQUELINE E. CRAWFORD-APPERSON, Vocational Expert; and DAVID G. BUELL, Administrative Law Judge,<br><br>　　　　　　Defendants. | 8:17CV163<br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the Court on plaintiff Janice Jones's ("Jones") Motion (Filing No. 21) to reverse the Commissioner of Social Security's decision and defendant Nancy A. Berryhill's[1] ("Commissioner") Motion to Affirm Commissioner's Decision (Filing No. 22). For the reasons stated below, the Commissioner's Motion is granted and Jones's Motion is denied.

I.　　BACKGROUND

　　A.　　Procedural History

Jones first filed an application for social security benefits in April of 2012 before an administrative law judge dismissed it in January of 2013 for late filing. On April 22, 2013, Jones applied for Supplemental Security Income ("SSI") and Retirement, Survivors and Disability Insurance. The Commissioner denied both of the claims after determining Jones was not disabled. Jones requested reconsideration, and, after reconsideration, the

---

[1]On January 23, 2017, Nancy A. Berryhill was appointed the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

Commissioner again denied the claims. On November 7, 2013, Jones requested a hearing in front of an Administrative Law Judge ("ALJ").

The first hearing on October 20, 2014, was postponed after Jones's attorney and the ALJ began to argue. After a second hearing on January 29, 2015, a different ALJ issued a fully favorable decision to Jones, determining she met the criteria for disability under the Social Security Act. *See* 42 U.S.C. § 1382c(a)(3)(A). The Appeals Council reviewed the case and determined the ALJ's decision was not supported by substantial evidence. The Appeals Council remanded the case for a third hearing. The third hearing occurred on November 16, 2016, in front of a third ALJ. That ALJ determined Jones was not disabled, and the Appeals Council denied Jones's request for review.

Following the denial of her appeal, Jones filed a complaint in this Court. Jones, proceeding pro se, claims she is disabled with an onset date of March 18, 2011. She specifically points to a recommendation that she see a specialist for her back from Todd Sekundiak M.D. ("Dr. Sekundiak"), and the fact that she has been unsuccessful in finding employment as a parking-lot attendant. Jones also claims the hearing was deficient because (1) its time changed, (2) Jones was not sworn in until halfway through the hearing, and (3) the vocational expert ("VE") was not present for the first part of the hearing and gave testimony over the phone.

### B. Facts

Jones is currently fifty-seven years old. She has an eleventh-grade education and has been employed as a housekeeping custodian, parking-lot attendant, casino porter, and grocery-store stocker. She has not worked in any substantial capacity since leaving employment as a housekeeping custodian at the Nebraska Medical Center in February of 2011.

1. **Summary of the Medical Records**

On May 31, 2012, Jonathan R. Thompson, M.D. ("Dr. Thompson") evaluated Jones after she alleged possible tuberculosis, diffuse joint pain, and depression. Dr. Thompson determined it was unlikely Jones had tuberculosis and Jones's depressive symptoms did not seem to have significantly affected her life. He found Jones had minimal decreased range of motion in her wrists, excellent grip strength, and excellent upper extremity strength. While she had some decreased internal rotation of her hip and walked with a slight limp, Jones had preserved knee flexion, well-preserved ankle flexion, and no difficulty with lower extremity muscle strength. Dr. Thompson concluded Jones had diffuse body pain, noting tenderness in the lumbar and lower thoracic spine with an otherwise well-preserved range of motion. He concluded Jones "actually is quite well and based on my exam today I feel she would be able to perform most duties."

After seeing Dr. Thompson, Jones spoke with Jennifer L. Lindner, Ph.D. ("Dr. Lindner") who performed a psychological interview and report on Jones. Dr. Lindner determined that Jones (1) had some issues with depression that could be addressed by outpatient therapy and medication and (2) was capable of interacting appropriately with coworkers and supervisors.

Jones underwent a physical exam at Immanuel Medical Center on September 20, 2012, by Robert Devin, MD ("Dr. Devin"). According to Dr. Devin, Jones appeared in mild pain distress. He concluded, "Back exam normal, Back exam included findings of normal inspection, range of motion normal." The findings for upper extremity and lower extremity were also normal. Dr. Devin noted the pain was muscular and did not appear radicular.

According to medical-progress notes from the Douglas County Health Center Network Clinic ("Douglas County"), Jones had continued back pain and multilevel degenerative lumbar spondylosis on January 14, 2013. Douglas County recommended

Jones attend twice-weekly physical therapy on January 25, 2013. After a mental-status exam, Douglas County prescribed Lexapro for depression, anxiety, and irritability. According to a physical-therapy discharge summary, on February 8, 2013, Jones exhibited decreased hip flexion in her right and left hips, which were both rated at a three out of five in flexibility. Jones's self-reported pain intensity in her lumbar spine varied between nine and ten out of ten.

On August 22, 2013, Travis Hanson, M.D. ("Dr. Hanson") examined Jones. Dr. Hanson reported five out of five strength throughout her musculoskeletal system. He noted some decreased range of motion of her lumbar spine and some chronic low back pain and tenderness in the lumbar region.

On November 22, 2013, Jayahree Paknikar, M.D. ("Dr. Paknikar") conducted a physical exam of Jones. Dr. Paknikar noted Jones suffered from back pain, joint pain localized in the hip, and depression.

On December 12, 2013, Dr. Sekundiak examined Jones for chronic low-back pain and bilateral hip pain. Dr. Sekundiak noted tenderness to palpation over the bilateral trapezius and lower back. Jones tolerated full range of motion of bilateral hips and knees but with some tenderness at the extreme of internal rotation of bilateral hips. The hip pain was not significant. Dr. Sekundiak recommended aquatic physical therapy and referred Jones to an orthopedic spine specialist.

Jones visited the Charles Drew Health Center ("Charles Drew") on November 4, 2016. The physician at Charles Drew recommended Jones treat her back pain by applying compression with an ace wrap and ice for fifteen to twenty minutes three times a day. The physician rated Jones's musculoskeletal strength at a five out of five and noted she used a cane to aid mobility.

## 2. Third and Final Administrative Hearing

The ALJ was unable to contact the VE, Jacqueline Crawford, when the hearing began. The hearing went off the record for about five minutes during the ALJ's attempt to contact the VE. After failing, the ALJ decided to proceed with the portion of the hearing that did not require the VE, hoping the VE would establish a connection before the hearing's conclusion.

Jones testified that her last employment was in 2011 when she worked as a housekeeping custodian. Jones spoke with the ALJ about her inability to currently receive medical care. The VE then established a telephonic connection to the hearing. Jones explained her work history, including working as a grocery-store stocker, a housekeeper cleaner, and as a parking-lot attendant. Jones went into detail about the physical requirements of the various jobs she had held. At this point, Jones and the VE took an oath because the ALJ forgot to swear them earlier. The ALJ inquired about Jones's current physical condition, and Jones stated that she had pain in her back, hips, and legs and was suffering from a urinary-tract infection.

The ALJ asked Jones if she could still perform her previous work as a parking-lot attendant. Jones replied that she did not think so because she could not stay seated or in a small area. The ALJ asked if she would be able to perform the job if her employer allowed her to stand and sit at will. Jones initially stated that she would do that job before modifying her statement to "I would try to do it." The VE testified that Jones's previous parking-lot attendant job was light and sedentary work as Jones performed it.

The ALJ asked the VE if a worker with the ability to perform light work and who was capable of stooping, kneeling, crouching, and crawling occasionally could perform any of Jones's past relevant work. The VE testified that such a worker could perform Jones's past relevant work as a grocery-store stocker, housekeeping cleaner, and parking-lot attendant. The ALJ asked if a person could perform a parking-lot attendant job if there was a need to stand a minute every half hour to stretch. The VE responded that she

5

had no reason to believe that would be a problem. The ALJ further inquired if such an attendant could generally stand and sit as desired. The VE responded that, in her experience, employers would not care if the worker was either sitting or standing.

The ALJ asked Jones how long she could sit at a parking-lot attendant job. Jones replied that she could probably do it for twenty minutes before needing to get up and walk around the booth for maybe two or three minutes. The ALJ asked if Jones could follow that schedule of sitting for twenty minutes, walking around for two or three minutes, and then returning to sitting. Jones stated that she did not know because it "depends on how the pain comes." The ALJ asked the VE if employers of parking-lot attendants would allow that. The VE wondered if the worker would be able to see if cars were coming while the worker walked around. Jones answered that she would be able to see if a car was coming and make it back to the booth. The VE opined that an employer would not have a problem with that. Jones interjected that if the VE could get her that job she would take it but that her past boss would not allow her to leave the booth.

### 3. The ALJ's Determination

Following the hearing, the ALJ undertook the familiar five-step sequential process for determining disability.[2] First, the ALJ determined Jones had not engaged in substantial gainful activity since March 18, 2011, which was the alleged onset date. Second, the ALJ categorized Jones as having the severe impairment of degenerative disc disease of the lumbar spine but determined Jones's anxiety and depression were not severe. At the third step, the ALJ decided Jones did not have an impairment that met the criteria of any Social Security Income listings. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[2]*See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.") (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004)).

Because Jones did not have an impairment severe enough to establish disability on the medical facts alone, the ALJ determined Jones's residual functional capacity ("RFC") to evaluate if Jones was capable of performing past relevant work. Jones's RFC allowed her to perform sedentary work with the ability to stoop, kneel, crouch, and crawl occasionally. Jones would also be able to perform work that allowed her to sit and leave her workstation to stand and stretch for two or three minutes, twice per hour.

In determining Jones's RFC, the ALJ acknowledged Jones's degenerative disc disease, but determined her anxiety and depression were not severe. The ALJ also pointed to Jones's ability to perform the following actions independently: living alone, performing household chores, preparing meals, and operating a motor vehicle. Jones was also able to use public transportation. The ALJ also relied on Jones's representation that she would be able to work as a parking-lot attendant if she was able to take breaks, and he noted the testimony of the VE that employers would typically allow her to take those breaks. Finally, the ALJ summarized and analyzed the submitted medical records and diagnostic studies.

The ALJ used the RFC combined with the VE's testimony to determine Jones was capable of performing her past relevant work as a parking-lot attendant. The ALJ also emphasized that Jones testified she would be capable of performing that past work under certain circumstances. Because Jones was capable of performing past relevant work, the ALJ concluded she had not been disabled from March 18, 2011 through the date of his decision. The Appeals Council denied review.

## II. DISCUSSION
### A. Standard of Review

When reviewing the decision not to award disability benefits, courts do not act as fact-finders or substitute their judgment for the judgment of the ALJ or the Commissioner. *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). In reviewing an ALJ's decision, the district court should uphold a denial of disability benefits if the ALJ's

conclusion rests on substantial evidence in the record as a whole. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id.* (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)). When determining whether the evidence in the record as a whole is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).

### B. Substantial Evidence

The RFC is "what the claimant can still do despite his or her physical or mental limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017) (quoting *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001)). The determination of a claimant's RFC is the responsibility of the ALJ. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). "The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of [her] limitations." *Gann*, 864 F.3d at 951 (quoting *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003)) (alterations in original). The claimant bears the burden to establish an RFC that indicates disability. *Goff*, 421 F.3d at 790.

The ALJ relied on all the relevant evidence when determining Jones's RFC. The ALJ analyzed the conclusions of various treating physicians and the medical records submitted in the case. He also carefully looked at what Jones said she was able to do. Jones points to medical evidence about her back favorable to her; however, the ALJ clearly considered her degenerative disc disease. The RFC was supported by substantial evidence.

"Testimony from a VE . . . based on a properly phrased hypothetical question constitutes substantial evidence." *Milam v. Colvin*, 794 F.3d 978 (8th Cir. 2015). The VE testified parking-lot attendant employers would typically allow their employees to

walk around and stretch while performing their duties. Jones even responded that if the VE could get her that job, she would take it. The VE additionally testified that someone with Jones's RFC would be able to perform her past relevant work of a housekeeping custodian and grocery-store stocker in addition to the job of parking-lot attendant. The ALJ's decision that Jones was not disabled rested on substantial evidence and will not be overturned.

### C. Jones's Complaints

Jones states that she is unable to find work as a parking-lot attendant. However, "[u]nder the Social Security regulations, the test for disability is not whether an individual can actually get hired for a job, but whether he or she has the physical and mental capacity to adequately perform one." *Glassman v. Sullivan*, 901 F.2d 1472, 1474 (8th Cir. 1990).

Jones assigns error to the absence of the VE at the beginning of the hearing, her presence by telephone, the changed time of the hearing, and the ALJ's belated giving of the oath. To show these errors were not harmless, Jones "must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). There is no requirement that the VE be present during the entire hearing, or that the VE appear in person. Upon reviewing the transcript, it is clear that the VE missed nothing for which her presence was required. The changed hearing time is also harmless because Jones was able to appear and there was sufficient time for her testimony. The delay administering an oath to Jones in likewise was not harmful.

## III. CONCLUSION

Substantial evidence supported the ALJ's conclusion that Jones could perform her past relevant work as a parking-lot attendant. Any procedural errors related to the hearing were harmless. Accordingly,

9

IT IS ORDERED:

1. The Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 22) is granted.
2. Jones's Motion (Filing No. 21) to reverse the Commissioner's decision is denied.
3. A separate judgment in accordance with this Memorandum and Order will be entered this date.

Dated this 28th day of November, 2017.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge